IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DARNELLE HORSEY | : | CIVIL ACTION |
| [1424669] | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al. | : | NO. 10-2370 |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL  April 15, 2011
UNITED STATES MAGISTRATE JUDGE

Presently before this Court is a Petition for Writ of Habeas Corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner. Petitioner, Darnelle Horsey, is currently incarcerated at Green Rock Correctional Facility in Chatham, Virginia, where he is serving a term of imprisonment of 25 to fifty years for rape, involuntary deviate sexual intercourse and numerous other crimes. For the reason which follow, it is recommended that Mr. Horsey's habeas claims be denied and dismissed without an evidentiary hearing

### I. BACKGROUND[1]

The background of this case was set forth by the PCRA court as follows:

> [Petitioner's] convictions stemmed from the complainants testimony
> that he had sexually assaulted them at various times during the years
> they lived with him at 3020 Judson Street in Philadelphia. The girls
> had been living with their aunt before moving to [petitioner's] home

---

[1] In preparing this Report and Recommendation, I have reviewed the following documents: Mr. Horsey's original habeas petition and his revised petition, the Commonwealth's response, inclusive of all exhibits thereto, Petitioner's response to the Commonwealth's response, and a statement by Mr. Horsey filed October 12, 2010.

2

in 1990, while [petitioner's] son lived with his grandmother before moving in with [petitioner] in 1993. All of the complainants described living with [petitioner] as living in a constant state of fear. At 5'11 and over 300 pounds, [petitioner] used his physical presence to threaten and intimidate the children. In addition to the sexual abuse they were not allowed to leave the house, use the phone, or receive phone calls, and they were often punched, slapped, or beaten if [petitioner] was unhappy with anything they did or said. This systematic abuse continued almost daily until [petitioner's] arrest in April of 1999.

Complainant Marquita Dickerson (CP 9909-0428) testified that [petitioner] first began "touching her" on her chest, lips, and vagina, in 1992 when she was in the fifth grade. While her mother worked during the day, [petitioner] would call Marquita to the upstairs bedroom and force her to have sex with him. [Petitioner] would often hold her down, and put his penis in her mouth and vagina, and on her chest, and would punch her in her face, chest, and legs if she attempted to resist. On one occasion, he threatened to plunge a screwdriver into her vagina unless she had sex with him, and on another, for coming home late from school, he beat her until he blackened her eye, split her lip, and chipped her tooth. In 1997, at the age of 15, Marquita became pregnant with [petitioner's] child. She kept the father's identity from her mother, for fear of reprisal from [petitioner] and continued having sex with him under threat of force until his arrest.

Complainant Latonya Dickerson (CP #9909-0445) testified that [petitioner] began forcing her to have sex with him in 1995, when she was thirteen, and continued until she became pregnant with his child in 1998. Latonya also attempted to keep the identity of her baby's father a secret, but eventually told her mother [petitioner] was the father after her mother persisted. She attempted to run away twice, once while pregnant, and again after placing the baby up for adoption, but both times she was found and brought home by [petitioner] and her mother.

When Mrs. Bullock learned that [petitioner] fathered Latonya's child, she again confronted Marquita about the father of her child, and upon learning that [petitioner] fathered both children, she confronted him. When she threatened to leave with the children, [petitioner] blocked the front door of the house with the sofa until he eventually talked her out of leaving. After that incident, [petitioner]

further threatened Bullock telling her the State would "take her children", and that "if he went down, she would go down," to prevent her from reporting the abuse.

[Petitioner's} son, Donshae Horsey (CP #9909-0811) was raised by his grandmother, but went to live with [petitioner] in 1993, when he was ten years old. He stayed with [petitioner] for approximately one year, and in that time, he testified that [petitioner] routinely punched him and beat him with belts, or wood 4x4's, for being disobedient. He also testified that [petitioner] forcibly sodomized him in front of another adult, and on a separate occasion [petitioner] forced him to wash his penis while taking a shower with him. Donshae ran away from [petitioner's] home at the age of eleven, and went back to live with his grandmother. While living with his grandmother, Donshae became increasingly defiant and a chronic runaway, landing himself in various juvenile facilities and treatment centers.

On March 5, 1999, while in placement at the Southwestern juvenile detention center, Donshae told a therapist that [petitioner] had sexually abused him. He was put in contact with Philadelphia police, and on April 9, 1999 gave a statement. On April 21, 1999, police officers from the 39th district Special Victims Unit, (S.V.U) and the Five Squad served an arrest warrant for [petitioner] at his home. When they announced their presence at the front door, [petitioner] fled and hid in the back yard. While the officers from Five Squad searched the house for [petitioner], the S.V.U. officers asked Mrs. Bullock about [petitioner's] whereabouts. One of the officers caught a glimpse of [petitioner] in the backyard, yelled for assistance, and chased him into the back alley, and [petitioner] was placed in custody and transported to the 39th District sub-station, while Mrs. Bullock, Marquita, and Latonya, were transported to the 39th District Special Victims Unit. There, they were interviewed by detectives, and filed formal complaints against [petitioner].

*Commonwealth v. Horsey*, C.P. 9909-0428, 9909-0445, 9909-0511, No. 919 EDA 2007, slip op. at 2-5 (C.C.P. Philadelphia County, October 5, 2007). Following a jury trial, Mr. Horsey was found guilty of "two counts of rape, two counts of involuntary deviate sexual intercourse, three counts of sexual assault, two counts of statutory sexual assault, three counts of endangering the welfare of a

child, and one count of incest". *Commonwealth v. Horsey*, No. 919 Eastern District Appeal 2007, slip op. at 1 (Superior Court, December 10, 2008). On November 9, 2001, Mr. Horsey was sentenced to "an aggregate term of 25 to 50 years of imprisonment". *Id.* at 4.

Petitioner filed a timely appeal, raising the following issues:

> 1. Did the Lower Court err in overruling the defense objection when during closing argument the prosecutor stated that [D.H.'s] report of abuse came out in therapy?
>
> 2. Did the Lower Court err in overruling the defense objection when the prosecutor said to the jury, "The message that you send today to this [petitioner], because 5the [sic] faith that was put in you to enforce the law . . ."

*Commonwealth v. Horsey*, No. 151 EDA 2002, slip op. at 3 (Superior Court, May 11, 2004). On May 11, 2004, Petitioner's judgment of sentence was affirmed by Pennsylvania's Superior Court. On May 25, 2004, Petitioner filed for allowance of appeal in Pennsylvania's Supreme Court, and, on October 15, 2004, his petitioner was denied. *See Commonwealth v. Horsey*, No. 919 Eastern District Appeal 2007, slip op. at 4 (Superior Court, December 10, 2008); *Commonwealth v. Horsey*, 860 A.2d 489 (Pa. 2004) (Table).

On April 21, 2005, Petitioner filed his first petition for collateral relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §9541, *et seq., pro se*. Counsel was appointed, and an amended petition was filed on July 24, 2006. In his petition, Mr. Horsey "alleged trial counsel was ineffective for failing to raise a pre-trial motion for release under Rule 600(g), and for failing to object to the Commonwealth's expression of personal opinion about complaining witness' credibility during closing argument". *Commonwealth v. Horsey*, C.P. 9909-1428, 9909-0445, 9909-0511, No. 919 EDA 2007, slip op. at 5-6 (C.C.P. Philadelphia County, October 5, 2007).

5

"[Petitioner's] petition was dismissed without a hearing on March 8, 2007, upon the Court's finding that the issues raised in the PCRA petition were without merit." *Id.* at 2.

Mr. Horsey appealed to the Superior Court of Pennsylvania in a timely manner, and raised the following issues:

> (1) whether trial counsel was ineffective for failure to file a motion to dismiss based upon a violation of [petitioner's] right to a speedy trial pursuant to Pa.R.Crim.P. 600; and (2) whether trial counsel was ineffective for failure to object to the prosecutor's closing remarks regarding the witnesses' credibility.

*Commonwealth v. Horsey*, No. 919 Eastern District Appeal 2007, slip op. at 4-5 (Superior Court, December 10, 2008). On December 10, 2008, the PCRA court's denial of relief was affirmed. *Id.* at 10; 965 A.2d 295 (Pa. Super. 2008) (Table). A subsequent appeal to the Supreme Court of Pennsylvania was denied on June 2, 2009. *See Commonwealth v. Horsey*, 972 A.2d 520 (Pa. 2009) (Table).

On August 26, 2009, Mr. Horsey filed his second PCRA petition, which is still pending in the Philadelphia Court of Common Pleas. *See Commonwealth v. Horsey*, CP-51-CR-0904451-1999, Court of Common Pleas of Philadelphia County Docket at 11; *Commonwealth v. Horsey*, CP-51-CR-0904281-1999, Court of Common Pleas of Philadelphia County Docket at 11; *Commonwealth v. Horsey*, CP-51-CR-0905111-1999, Court of Common Pleas of Philadelphia County Docket at 1.

On May 19, 2010, the instant habeas petition was filed in this Court. The petition filed was incomplete in that pages appeared to be missing, and the petition contained no signature; however, attached to the petition was a motion for permission to proceed *in forma pauperis* which is signed and dated May 5, 2010. *See* Docket Entry No. 1-1. Mr. Horsey was ordered to submit a completed petition for writ of habeas corpus, which he did, signing and dating it July 8, 2010. That document

was filed in this Court on July 13, 2010. Giving Petitioner the benefit of the doubt, May 5, 2010, is deemed the date of filing, pursuant to the prison mailbox rule. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). Petitioner seeks habeas relief on the following grounds:

> Ground One: Did Petitioner's trial counsel's misrepresentation deprive Petitioner of his Sixth Amendment right to counsel, when counsel failed to file a motion to dismiss based upon Petitioner's Sixth Amendment right to a speedy trial.
>
> Ground Two: Was Petitioner's Sixth Amendment right to counsel violated when counsel failed to object to the prosecution's expression of a personal opinion about complaining witnesses' credibility during closing arguments, thereby prejudicing Petitioner's right to a fair trial.

Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody[2] at 5-6, 8-9. The Commonwealth denies that Mr. Horsey is entitled to federal habeas corpus relief because his petition is "untimely, as well as procedurally defaulted, meritless, or both". Response to Petition for Writ of Habeas Corpus[3] at 1.

## II. DISCUSSION

### A. Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA or the Act),[4] signed into law on April 24, 1996, significantly amended the laws governing habeas corpus petitions.

One of the amended provisions, 28 U.S.C. §2244(d), imposes a one-year statute of limitations on state prisoners who seek federal habeas relief. A habeas petition must be filed within one year from the date on which the petitioner's judgment of conviction becomes final. *See* 28 U.S.C.

---

[2]Hereinafter "Revised Petition".

[3]Hereinafter "Response".

[4]Pub. L. No. 104-132, 110 Stat. 1214, 1219 (1996), effective date April 24, 1996.

§2244(d)(1).[5]

In the instant case, the Supreme Court of Pennsylvania denied Mr. Horsey's request for allowance of appeal on October 15, 2004, concluding his direct appeal. Consequently, his conviction became final on January 13, 2005, which is the last date on which he could have filed a timely direct appeal to the United States Supreme Court. *See* Rule 13 of the Rules of the Supreme Court of the United States, which provides a ninety-day appeal period after a judgment by the state court of last resort.[6]

The amended habeas statute does include a tolling provision for "the time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending". 28 U.S.C. §2244(d)(2).

Mr. Horsey's habeas statute of limitations began on January 14, 2005, and continued to run until April 21, 2005, when he filed a timely petition for collateral relief in the PCRA forum. As of April 21, 2005, 98 days of Petitioner's AEDPA one-year statutory period had run.

The statute of limitations period was tolled during the entire time that Mr. Horsey's first PCRA petition was pending, from April 21, 2005, through June 2, 2009, when the Pennsylvania Supreme Court denied Petitioner's request for discretionary review. On June 3, 2009, the clock

---

[5] While the date on which the petitioner's conviction becomes final is typically the start date for the limitations period, the statute permits the limitations period to run from four other points of time, depending on which occurs latest. In addition to the date on which the petitioner's conviction becomes final, the start date can also run from: (1) "the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"; (2) "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence".

[6] There is nothing in the record that would call for the use of one of the other start dates provided in 28 U.S.C. §2244(d)(1). There was no impediment to filing an application created by State action in violation of the Constitution or laws of the United States which prevented Mr. Horsey from filing a habeas petition. No new constitutional right has been asserted, and at no later date was the factual predicate of the claims presented discovered.

began to run again in the AEDPA limitation period, until August 26, 2009, when Mr. Horsey filed a second PCRA petition, which is still pending in the state court. At this point, 183 days have passed in Petitioner's AEDPA one-year statute of limitations. With time remaining on the AEDPA one-year statute of limitations, this petition is not untimely.

**B. Exhaustion**

The exhaustion rule, codified in 28 U.S.C. §2254[7], provides that the habeas petitioner must have "exhausted the remedies available in the courts of the State" for all constitutional claims before a federal court shall have habeas corpus jurisdiction. There are rare circumstances that circumvent this requirement, none of which apply to the case at hand. To exhaust all remedies for a claim under 28 U.S.C. §2254, the habeas petitioner must give the state courts a full and fair opportunity to resolve all federal constitutional claims. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order for Mr. Horsey to give each habeas claim a full and

---

[7]The exhaustion requirements of 28 U.S.C. §2254 provide:

> (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that:
>
>   (A) the applicant has exhausted the remedies available in the courts of the State; or
>   (B)(i) there is an absence of available State corrective process; or
>       (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
>  (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State:
>
>  (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the questions presented.

fair opportunity for resolution, he must have presented both the factual and legal substance in the state courts through the highest tribunal, the Pennsylvania Superior Court.[8] The exhaustion requirement is rooted in considerations of comity; the statute is designed to protect the role of the state court in enforcement of federal law and to prevent disruption of the state judicial proceedings. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982); *Castille*, 489 U.S. at 349 (1989). The burden is on the habeas petitioner to establish that he has fairly presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (*quoting Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992), *cert. petition dismissed*, 506 U.S. 1089 (1993)), ("[b]oth the legal theory and the facts underpinning the federal claim must have been presented to the state courts . . . and the same method of legal analysis must be available in the state courts as will be employed in the federal court.")

An unexhausted claim becomes procedurally defaulted when the petitioner has no additional state remedies available to pursue the issue. *See Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001) (when a claim has not been fairly presented to the state courts, but further state-court review is clearly foreclosed under state law, the claim is procedurally defaulted and may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default), *cert. denied,* 535 U.S. 957 (2002).

Procedural default also occurs when an issue is properly asserted in the state system but is not addressed on the merits because of an independent and adequate state procedural rule. *See Sistrunk v. Vaughn*, 96 F.3d 666, 673 (1996) and *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.

---

[8] Seeking *allocatur* by the Pennsylvania Supreme Court is not part of the standard appeals process. Pennsylvania Supreme Court *Order No. 218* (May, 2000); *see also Mattis v. Vaughn*, 128 F.Supp.2d 249, 261 (E.D.Pa. 2001); *Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

1999) ("If the final state court presented with a federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence.")

A procedural default may be excused if the habeas petitioner can demonstrate "cause" for the default and "prejudice attributable thereto" or demonstrate that the failure to consider his habeas claim will result in a "fundamental miscarriage of justice". *Wenger*, 266 F.3d at 224 (3d Cir. 2001). *See also McCandless,* 172 F.3d at 260 (3d Cir. 1999).

Though Mr. Horsey still has a PCRA petition pending in the state court, the claims he brings to this federal habeas petition were addressed throughout his first PCRA proceeding. These claims having been presented to the state courts through the highest tribunal, they are reviewable in this federal habeas forum.

### C. Standard of Review

Because Mr. Horsey's habeas petition was filed after the effective date of the AEDPA, the amended habeas standards apply to his exhausted claims.

AEDPA precludes habeas relief on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. §2254(d) (Supp. 1998).

In interpreting the above language, the Third Circuit has discussed the appropriate degree of deference which AEDPA requires a federal habeas court to accord a state court's construction of

federal constitutional issues and interpretation of Supreme Court precedent. *See Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir.), *cert. denied*, 528 U.S. 824 (1999). The Third Circuit has held that under 28 U.S.C. §2254(d)(1), a two-step inquiry is warranted. The majority agreed:

> (1) The proper initial inquiry for the habeas court is whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only when the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.
>
> (2) In the absence of such a showing, the habeas court must then ask whether the state court decision represents an "unreasonable application of" Supreme Court precedent. This inquiry is an objective one, namely, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified.

*Matteo*, 171 F.3d at 891 (3d Cir. 1999).

The United States Supreme Court has set forth the scope of habeas review after AEDPA. *See Williams v. Taylor*, 529 U.S. 362 (2000). According to the *Williams* majority:

> We [the Supreme Court Justices] all agree that state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated. [. . .] In sum, the [AEDPA] statute directs federal courts to attend every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all the reasons for accepting a state-court's judgment, a federal court is convinced that a prisoner's custody-or, as in this case, his sentence of death-violated the constitution, that independent judgment should prevail.

*Id.* at 389.

Under AEDPA, a federal reviewing court must presume that factual findings of state trial and

appellate courts are correct. The presumption of correctness may only be overcome on the basis of clear and convincing evidence to the contrary. *See Stevens v. Delaware Correctional Center, et al.*, 295 F.3d 361, 368 (3d Cir. 2002).

**D. Analysis**

1. <u>Ineffective Assistance of Counsel</u>

Initially, Mr. Horsey claims that he was denied effective assistance of counsel when trial counsel failed to file a motion to dismiss based upon Petitioner's Sixth Amendment right to a speedy trial. Mr. Horsey states that: "Petitioner's trial did not commence until 642 days after his arrest. Petitioner's counsel did not file a motion to dismiss due to the Commonwealth's delay". Revised Petition at 5. As this issue was presented to the state courts in Petitioner's first PCRA proceedings, it has been properly exhausted and may be reviewed by this Court.

In order for a petitioner to establish ineffective assistance of counsel under the federal *Strickland* standard, he must show: [1] that counsel's performance was "deficient" and [2] that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To demonstrate that counsel's performance was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness based on the facts of the particular case, viewed as of the time of counsel's conduct. *See Senk v. Zimmerman*, 886 F.2d 611, 615 (3d Cir. 1989) (*quoting Strickland*, 466 U.S. at 688, 690 (1984)).

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for unprofessional errors, the result would have been different. This standard is less strict than the "more likely than not" standard. *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992), *cert. denied*, 507 U.S. 954 (1993). "A reasonable probability is a probability sufficient to undermine confidence

13

in the outcome." *Id.* at 358 (*quoting Strickland*, 466 U.S. at 694 (1984)).

As the Supreme Court has prescribed a rule which governs Mr. Horsey's ineffective assistance of counsel claims, the *Strickland* standard "shape[s] the contours of an appropriate analysis of a claim of constitutional error to merit review of a state court's decision under section 2254(d)(1)'s 'contrary to' prong." *Matteo*, 171 F.3d at 886 (3d Cir. 1999).

As the Superior Court of Pennsylvania opined:

> First, [petitioner] claims that trial counsel was ineffective for failing to file a motion to dismiss based upon a violation of his right to a speedy trial. Specifically, [petitioner] argues that he was brought to trial 235 days past the date allowable under Pa.R.Crim.P. 600. [Petitioner] claims that the Commonwealth did not exercise due diligence to bring his case to trial, and [petitioner's] counsel had no reasonable basis for failing to file a motion to dismiss.
>
> A defendant's constitutional right to a speedy trial is embodied in Rule 600 of the Pennsylvania Rules of Criminal Procedure. If the Commonwealth attempts to bring a defendant to trial beyond the 365-day-period prescribed by Rule 600, and the defendant files a Rule 600 motion to dismiss, the trial court must assess whether there is excludable time and/or excusable delay. *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004), *appeal denied*, 583 Pa. 659, 875 A.2d 1073 (2005). In the context of Rule 600, the distinction between "excludable time" and "excusable delay" is as follows:
>
>> "Excludable time" is defined in Rule 600(c) as the period of time between the filing of the written complaint and the defendant's arrest, . . . any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

14

*Commonwealth v. Brown*, 875 A.2d 1128, 1135 (Pa. Super. 2005), *appeal denied*, 586 Pa. 734, 891 A.2d 729 (2005) (internal citations omitted).

Upon review of the record, we have found that while [petitioner's] trial counsel did not file a motion to dismiss, [petitioner] himself, filed a *pro se* motion to dismiss under Rule 600 prior to the commencement of trial. The record shows that on February 23, 2001, the trial judge carefully considered [petitioner's] motion as he claimed that his counsel was not effectively representing him and filing requested motions. (Notes of testimony, 2/23/01 at 13-24.) After review, the trial court found [petitioner's] motion to be meritless and, due to multiple defense continuances, only six weeks of time chargeable to the Commonwealth. (*Id.* at 22-23.) The trial judge continued by stating the following to [petitioner] regarding his attorney:

> He's aware of what motions are filed, when to file, and when there's merit in the motion that he files. And that's why he looked at these dates the same way I'm looking at these dates. And not only as a judge, but as a long-time defense attorney myself, I wouldn't file a motion with these dates, what happened on these particular dates, because there would not be merit. It would just be a waste of the court's time.

*Id.* at 23.

Based upon the foregoing, it is clear that there is no arguable merit to [petitioner's] assertion that his right to a speedy trial was violated pursuant to Rule 600. Further, [petitioner] was not prejudiced by trial counsel's failure to file a motion to dismiss based upon a violation of Rule 600, as [petitioner's] motion was considered and dismissed as meritless by the trial court.

*Commonwealth v. Horsey*, No. 919 Eastern District Appeal 2007, slip op. at 5-8 (Superior Court, December 10, 2008). The Pennsylvania standard for judging ineffectiveness of counsel claims is not contrary to the ineffectiveness standard enunciated in *Strickland*. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Spence v. Sobina*, 2001 WL 1161799 *7 (E.D.Pa. February 24, 2011).

Therefore, "the Pennsylvania courts identified the correct governing legal principle" in this matter. *Id.* (internal citations omitted). The state court's resolution of the issue was certainly reasonable and not contrary to nor an unreasonable application of federal law. Petitioner is not entitled to federal habeas relief on this claim.

2. Ineffective Assistance of Counsel

In his second claim, Mr. Horsey again alleges ineffective assistance of trial counsel. He alleges that his right to counsel was violated when trial counsel failed to object to the prosecution's expression of a personal opinion about complaining witnesses' credibility during closing arguments, thus, prejudicing his right to a fair trial. *See* Revised Petition at 8. This issue, like the one above, was addressed during Petitioner's first PCRA proceeding, making it reviewable by this habeas court.

As Pennsylvania's Superior Court explained:

> Next, [petitioner] claims that trial counsel was ineffective for failing to object to the prosecutor's remarks during closing argument regarding the credibility of M.D., L.D., and D.H. [Petitioner] specifically objects to the following remarks made by the prosecutor about [petitioner]:
>
>> He needs to know that you're not excusing what he did, that you believe them, because if you don't believe them with the proof that you have here, three victims, two with babies, what message do you send him? How bold can he be? How many lines can he cross?
>
> Notes of testimony, 3/1/01 at 66-67. [Petitioner] contends that these remarks are improper as they convey the prosecutor's opinion about the credibility of the complainants. [Petitioner] argues in his brief that these comments are inflammatory and created a fixed bias in the minds of the jury, thereby prejudicing [petitioner's] right to a fair trial. ([Petitioner's] brief at 16.)
>
> A prosecutor has reasonable latitude during his

16

> closing argument to advocate his case, respond to arguments of opposing counsel, and fairly present the Commonwealth's version of the evidence to the jury. *Commonwealth v. Abu-Jamal*, 553 Pa. 485, 720 A.2d 79, 110 (1998). A challenged statement by a prosecutor must be evaluated in the context in which it was made. *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 198 (1997). Not every intemperate or improper remark mandates the granting of a new trial. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). Reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict. *Commonwealth v. Cox*, 556 Pa. 368, 728 A.2d 923, 931 (1999).

*Commonwealth v. Cooper*, 596 Pa. 119, ____, 941 A.2d 655, 668 (2007). While it is improper for the prosecution to express a personal belief regarding the credibility of the defendant or other witnesses, a prosecutor may, however, comment on a witness' credibility. *Commonwealth v. Chmiel*, 585 Pa. 547, 620, 889 A.2d 501, 544 (2005), *cert. denied*, ____ U.S. ____, 127 S.Ct. 101 (2006). It is well established that a prosecutor may respond to defense arguments with logical force and vigor. *Id.* "If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility." *Id.*

Instantly, in its closing argument, the defense attempted to discredit the testimony of each of the children. The defense argued that D.H. was an angry young man attempting to get back at his father for abandoning him by claiming that [petitioner] sexually abused him. (Notes of testimony, 3/1/01 at 28-32.) The defense claimed that D.H.'s testimony was purely the result of "continuing bitterness" and "enmity" towards his father. (*Id.* at 32.) The defense continued by arguing that the jury should not believe the testimony of M.D. because she failed to report one instance of abuse prior to trial. (*Id.* at 33-34.) Additionally, the defense argued that if these children were really abused, they would not have continued to live with [petitioner]. (*Id.* at 44.)

In fair response to these attacks against the credibility of M.D., L.D.,

17

> and D.H., the prosecutor made the remarks to which [petitioner] now objects. However, we find that the remarks made by the prosecutor do not express his personal belief regarding the credibility of the complainants; but instead, he urges the jury to evaluate the credibility of these children based upon the evidence. Thus, we find that the remarks complained of did not rise to the level of prosecutorial misconduct; and as such, defense counsel cannot be deemed ineffective for failing to raise an objection. *Cooper, supra* at ____, 941 A.2d at 669, citing *Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471 (1998), *cert. denied*, 537 U.S. 1195 (2003).

*Commonwealth v. Horsey*, No. 919 Eastern District Appeal 2007, slip op. at 8-10 (Superior Court, December 10, 2008).

The Pennsylvania Superior Court's analysis of the issue comports with the federal standard pursuant to *Darden v. Wainwright*, 477 U.S. 168 (1986). To succeed on a claim that a prosecutor's closing argument violated federal law, it must be shown that the prosecutor's comments were, not only improper, but also "so infected the trial with unfairness as to make the resulting conviction a denial of due process". *Id.* at 181. It is evident herein that the prosecutor's offending comments were responsive to the statements of defense counsel concerning the children's alleged fabrication of their testimony. Furthermore, the prosecutor clearly urged the jury to evaluate the credibility of the complainants based upon the evidence presented.

The state court found that the remarks did not rise to the level of prosecutorial misconduct, and so does this court. Counsel cannot be deemed ineffective for failing to raise a meritless objection. The state court's resolution of this claim is entirely reasonable, and Mr. Horsey cannot show that his trial counsel was ineffective. Federal habeas relief is not warranted on this claim.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that the Petition for Writ of Habeas

Corpus, pursuant to 28 U.S.C. §2254, be DENIED AND DISMISSED WITHOUT AN EVIDENTIARY HEARING. It is further recommended that a finding be made that there is no probable cause to issue a certificate of appealability.[9]

BY THE COURT:

  S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE


By Fax: April 15, 2011
       Hon. Jan E. DuBois    215-580-2141
       Ryan Dunlavey, Esq.    215-686-5725

By Mail: April 15, 2011
       Darnelle Horsey
       1424669
       Green Rock Correctional Facility
       P.O. Box 1000
       Chatham, VA 24531

---

[9] Petitioner is advised that he may file objections to this Report and Recommendation. *See* Local R. Civ. P. 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.